1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

KEVIN DARNELL BRYANT,

                Plaintiff,

      v.

RAYBON C. JOHNSON, et al.,

                Defendants.

Case No. 2:20-cv-03459-DMG-JC

ORDER DISMISSING SECOND
AMENDED COMPLAINT WITH
LEAVE TO AMEND AND
DIRECTING PLAINTIFF TO
RESPOND TO ORDER

## I.    INTRODUCTION

On April 14, 2020, plaintiff Kevin Darnell Bryant, who is in state custody, is proceeding *pro se*, and has since been granted leave to proceed without prepayment of the filing fee ("IFP"), filed a Civil Rights Complaint ("Original Complaint") pursuant to 42 U.S.C. § 1983 ("Section 1983").  (Docket No. 1).  On March 16, 2021, the Court screened and dismissed the Original Complaint with leave to amend.  (Docket No. 21).  On May 14, 2021, plaintiff filed a First Amended Complaint (Docket No. 27), which the Court screened and dismissed on November 16, 2021 (Docket No. 28).

On July 13, 2022, plaintiff filed the operative Second Amended Complaint (or "SAC") against the following fifteen defendants at California State Prison, Los

Angeles County in Lancaster, California ("CSP-LAC"), where plaintiff was formerly housed:  (1) Warden Raybon C. Johnson; (2) Former Warden Deborah Asuncion; (3) Chief Deputy Warden Donald D. Ulstad; (4) Associate Warden Eric Jordan; (5) Correctional Sergeant Cori J. Campbell; (6) Investigative Services Unit ("ISU") Correctional Officer (C/O) Brandon Matthew Cherpin; (7) C/O Sergio Montez; (8) C/O LaShanna Bridgeforth; (9) C/O Eduardo Torres; (10) C/O Frank David Garcia; (11) Correctional Sergeant Andrew Puentes; and (12-15) Does 1-4. (Docket No. 35).  Defendants are all sued in their individual and official capacities.  (SAC at 4-6).  The Second Amended Complaint sets forth three "claims" which assert, respectively, that defendants (1) violated plaintiff's constitutional rights by having him assaulted in retaliation for winning his prior lawsuit; (2) failed to protect plaintiff after being notified of threats and assaults against him; and (3) violated his rights to due process and equal protection by conspiring to place him in administrative segregation ("Ad-Seg") based on knowingly false charges.[1]  (SAC at 7).  Plaintiff seeks various remedies, including damages, declaratory relief and an order requiring prison officials to transfer plaintiff to another facility.  (SAC at 15).

As the Second Amended Complaint is deficient in multiple respects, including those detailed below, it is dismissed with leave to amend.

///
///
///
///
///

---

[1]Although plaintiff does not clearly or accurately specify the legal right at issue in these claims, they are construed as asserting, respectively, (1) a First Amendment retaliation claim, (2) an Eighth Amendment excessive force/failure-to-protect claim, and (3) a Fourteenth Amendment due process/equal protection claim.

## II.   SECOND AMENDED COMPLAINT[2]

The Second Amended Complaint, liberally construed, alleges the following:

On May 18, 2017, while plaintiff was housed at Salinas Valley State Prison ("SVSP"), he won a civil lawsuit in the United States District Court for the Eastern District of California against two California Department of Corrections and Rehabilitation ("CDCR") correctional officers at Kern Valley State Prison ("KVSP"), based on claims that the officers violated plaintiff's constitutional rights by conspiring with inmates to have plaintiff assaulted, failing to protect him from the assault, and conspiring to deny him medical care.  (SAC ¶ 1).  On July 14, 2017, plaintiff was transferred from SVSP to CSP-LAC.  (SAC ¶ 5).  At CSP-LAC, prison officials "almost immediately" started threatening plaintiff, and told him it was payback for filing and winning his lawsuit.  (SAC ¶ 6).  Plaintiff, along with his god-sister and attorney, reported the threats to then-Warden Asuncion and others, seeking protection and transfer to a different facility, to no avail.  (SAC ¶ 7).

On August 16, 2017, defendants Montez and Bridgeforth told plaintiff that their fellow officers wanted to know why he had snitched on the KVSP officers (in his earlier lawsuit) and asked if plaintiff thought they were going to let him get away with having done so.  (SAC ¶ 8).  They continued to threaten plaintiff and tell him he was going to be assaulted for filing and winning his lawsuit.  (SAC ¶ 9).  On September 5, 2017, Montez had three inmates attack plaintiff under the stairs, breaking plaintiff's nose, while Montez watched from near the counselor's office but never pushed his alarm button or intervened to protect plaintiff.  (SAC

---

[2]The "Factual Allegations" section of the Second Amended Complaint is organized in sixty-five paragraphs, numbered sequentially, from 1-65.  (See SAC at 8-14).  All citations to paragraphs in this Order refer to the numbered paragraphs in the Factual Allegations section of the Second Amended Complaint.  The named individuals in these allegations are listed as defendants unless otherwise noted.

¶ 10).  Afterward, Montez told plaintiff he would be killed if he reported Montez or the inmates.  (SAC ¶ 11).  When plaintiff told Montez about his broken nose, Montez said he did not care.  (SAC ¶ 11).

On November 6, 2017, defendant Bridgeforth threatened to have plaintiff assaulted again unless he sent her $5,000 for two cell phones she had put in plaintiff's cell, unsolicited, weeks before.  (SAC ¶ 12).  At plaintiff's request, plaintiff's god-sister reported this directly to defendant Warden Asuncion.  (SAC ¶ 13).

On November 29, 2017, defendant Montez had two inmates attack plaintiff in the dayroom while Montez looked on but did not help plaintiff in any way.  (SAC ¶ 15).  Afterward, plaintiff told defendant Montez he would report the incident to the warden, and Montez responded by striking plaintiff on the head twice with his baton, leaving two permanent dents in plaintiff's skull.  (SAC ¶ 17).  At plaintiff's request, plaintiff's god-sister reported this directly to defendant Warden Asuncion and others.  (SAC ¶ 18).

On January 3, 2018, two gang member inmates told plaintiff that defendants Montez and Bridgeforth had promised them drugs and/or cell phones if they killed plaintiff.  (SAC ¶ 19).  Later that day, Montez threatened to have other inmates assault him, which was overheard by medical staff nurses.  (SAC ¶ 20).  Soon after, mental health staff received reports of this threat and had plaintiff transferred to a different building.  (SAC ¶ 21).

On January 9, 2018, defendant Garcia, who years before had caused plaintiff's jaw to be broken in an assault, told plaintiff he would get what he had coming to him for suing those officers at KVSP.  (SAC ¶ 22).

On February 1, 2018, defendant Torres told plaintiff he was housing plaintiff with an inmate who would assault or possibly kill plaintiff in retaliation for plaintiff's lawsuits and reporting of Montez's actions. (SAC ¶ 23).  Plaintiff
///

4

1    reported this to his prior civil attorney, who complained to Warden Asuncion.

2    (SAC ¶ 24).

3         On April 25, 2018, defendants Torres and Garcia paid several inmates to

4    jump plaintiff in the dayroom.  (SAC ¶ 26).  As the inmates kicked and punched

5    plaintiff in the head and back and tried to stab him in the neck, none of the officers

6    watching did anything to stop it.  (SAC ¶ 26).

7         On August 2, 2018, plaintiff's god-sister reported the assaults to Warden

8    Asuncion, who was upset about being contacted directly, and otherwise did not

9    seem concerned about the allegations of assault and torture.  (SAC ¶ 27).

10        On August 22, 2018, defendants Torres and Campbell directed the control

11   booth officer to open plaintiff's cell door, enabling two inmates to enter and attack

12   plaintiff, while the officers watched and did nothing to stop it.  (SAC ¶ 29).  A few

13   days later, on August 26, Torres and Campbell again directed that plaintiff's cell

14   be opened so that the same two inmates could enter and attack plaintiff.  (SAC

15   ¶ 30).  The inmates sliced plaintiff's chest with a razor blade before plaintiff could

16   fight them off.  (SAC ¶ 30).  Again, Torres and Campbell watched and did

17   nothing.  (SAC ¶ 30).  Afterward, when plaintiff was bleeding and needed medical

18   attention, Torres and Campbell came to plaintiff's cell and told him he would be

19   attacked again if he went to the medical clinic or ever reported the incident.  (SAC

20   ¶ 31).

21        On September 5, 2018, defendants Warden Asuncion, Chief Deputy Warden

22   Ulstad, and ISU C/O Cherpin, conspired to submit a knowingly false Rule

23   Violation Report ("RVR") causing plaintiff to be placed in Ad-Seg.  (SAC ¶ 32).

24        On the day plaintiff was placed in Ad-Seg, while defendants Torres and

25   Campbell escorted him to the stand-up cages in the gym, they told him they were

26   going to take all his food and personal property and use it to pay off the inmates

27   whom they had directed to assault plaintiff.  (SAC ¶ 33).  Over a thousand dollars'

28   ///

5

worth of plaintiff's property was later taken and given away, according to several witnesses.  (SAC ¶ 33).

On October 4, 2018, plaintiff appeared before defendant Warden Asuncion at his Inmate Classification Committee ("ICC") hearing and explained everything that had been happening to him.  (SAC ¶ 34).  Asuncion claimed she was going to "make [plaintiff] whole again" and direct the ISU to investigate the matter, and she would also release plaintiff from Ad-Seg to the C-yard.  (SAC ¶ 34). However, Asuncion retired from the CDCR several days later, without ever initiating any investigation or otherwise helping to protect plaintiff from further harm.  (SAC ¶ 35).

When defendant Johnson replaced defendant Asuncion as warden, in October 2018, plaintiff's god-sister called Warden Johnson and told him about the assaults on plaintiff, and Warden Johnson said he would investigate and protect plaintiff, but did not do so.  (SAC ¶ 36).  Plaintiff's god-sister also told defendants Associate Warden Jordan and Chief Deputy Warden Ulstad about the threats and assaults, but they, too, did nothing to help and instead moved to cover up every complaint and allowed the harms to continue.  (SAC ¶ 38).

On January 8, 2019, defendants Warden Johnson, Chief Deputy Warden Ulstad, and ISU C/O Cherpin conspired to submit a false RVR causing plaintiff to be placed back in Ad-Seg.  (SAC ¶ 39).  At plaintiff's subsequent hearing on the RVR, plaintiff was not allowed to call witnesses or even submit written questions to witnesses, who would have testified that the charges were knowingly false. (SAC ¶ 40).  The senior hearing officer, Lt. Lugo (not a defendant), told plaintiff that defendant Warden Johnson had directed him to deny plaintiff any witnesses and to find plaintiff guilty, even though Lt. Lugo acknowledged there was no evidence of plaintiff's guilt.  (SAC ¶ 41).  Defendant Ulstad also signed off on the hearing decision.  (SAC ¶ 40).

///

On March 21, 2019, Associate Warden Jordan, who had been contacted by plaintiff's god-sister, came to plaintiff's cell in Ad-Seg and said plaintiff and his god-sister would be killed if they did not stop making complaints.  (SAC ¶ 42). Defendant Jordan also told plaintiff that defendants Torres and Campbell were taking his property and orchestrating assaults against plaintiff as retaliation for his lawsuits and complaints, and it would not be over until plaintiff was dead.  (SAC ¶ 43).

Defendant Chief Deputy Warden Ulstad chaired all of plaintiff's ICC hearings in Ad-Seg, and assertedly conspired with defendants Warden Johnson and Sergeant Campbell to have plaintiff assaulted.  (SAC ¶ 44).  At an ICC hearing on April 4, 2019, defendant Ulstad ordered plaintiff to be released from Ad-Seg and returned to the C-yard.  (SAC ¶ 45).  However, because plaintiff's god-sister had paid prison gang members to protect him, the planned assault on plaintiff did not materialize, so Warden Johnson had plaintiff placed back in Ad-Seg four days later, on April 8.  (SAC ¶ 46).

On the morning of April 8, 2019, two or three officers took plaintiff to the gym, strip-searched him, and locked him in a stand-up cage, which they said they were doing at the warden's orders.  (SAC ¶ 47).  Three or four other officers (defendants Does 1-4) then came and told plaintiff they were taking him to the program office to see defendant Campbell.  (SAC ¶ 48).  Plaintiff told the officers that he required a waist chain due to his reliance on a cane, but they refused to obtain one.  (SAC ¶ 49).  They handcuffed him behind his back and took him straight to the staff restroom in the gym, where one of the officers grabbed plaintiff in a choke-hold from behind until he was unconscious.  (SAC ¶ 50).  The officers continued to repeatedly choke plaintiff unconscious each time he awoke, for an unknown length of time.  (SAC ¶ 50).  When plaintiff finally regained consciousness, he was on the floor, and the Doe defendants were pulling up plaintiff's pants and underwear.  (SAC ¶ 51).  Plaintiff felt extreme pain in his

rectum.  (SAC ¶ 51).  The officers lifted him up, put him back in the stand-up cage, and left.  (SAC ¶ 51).

Defendant Campbell arrived a few minutes later and told plaintiff that the warden had said to teach plaintiff some humility by subjecting him to sexual assault.  (SAC ¶ 52).  Defendant Campbell asked plaintiff if he felt humiliated and started laughing and making fun of him for having been sexually assaulted.  (SAC ¶ 52).  She admitted defendants Johnson and Ulstad had directed this assault.  (SAC at ¶ 52).  Around 3:00 or 4:00 p.m., two officers (not defendants) came and took plaintiff back to Ad-Seg.  (SAC ¶ 53).

From a holding cell in Ad-Seg, plaintiff quietly tried to report the sexual assault to a psychologist (not a defendant), who said he was leaving for the day and had no time.  (SAC ¶¶ 54-55).  The psychologist said he would tell the Ad-Seg sergeant, defendant Puentes, though plaintiff begged him not to.  (SAC ¶ 55).  Soon after, defendant Puentes came by and threatened plaintiff that if he reported the assault, the officers would get away with it and plaintiff would be hurt and possibly killed.  (SAC ¶ 56).  Plaintiff insisted that he would report it anyway.  (SAC ¶ 57).

At about 9:30 or 10:00 p.m., after defendant Puentes had threatened plaintiff for hours, defendant Garcia and Officer Smith (not a defendant) brought plaintiff to an interview room, and a team from Antelope Valley Hospital performed a forensic exam.  (SAC ¶ 58).  The nurse who performed the exam remarked that she saw something inside plaintiff's rectum, and plaintiff was ordered to be transported by ambulance to Antelope Valley Hospital.  (SAC ¶ 59).  At the hospital, a plastic spoon was painfully extracted from plaintiff's rectum.  (SAC ¶ 60).

On May 9, 2019, plaintiff served defendants with private administrative process, which consisted of a "Formal Request for a Contested Case Administrative Hearing," along with exhibits, presenting all the issues as needed

to exhaust his administrative remedies and create a complete administrative record for the court.  (SAC ¶ 62).

On May 10, 2019, when plaintiff was finally allowed to make a phone call, he called his god-sister, who then reported the incident to the governor.  (SAC ¶ 61).  Eleven days later, on May 21, plaintiff was suddenly transferred to the California Substance Abuse Treatment Facility and State Prison in Corcoran, California ("CSATF"), where prison staff continued to try to have plaintiff assaulted.  (SAC ¶ 61).

## III.    PERTINENT LAW

### A.    The Screening Requirement

As plaintiff is a prisoner proceeding IFP on a civil rights complaint against governmental defendants, the Court must screen the Second Amended Complaint, and is required to dismiss the case at any time it concludes the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  See 28 U.S.C. §§ 1915(e)(2)(B), 1915A; 42 U.S.C. § 1997e(c); Byrd v. Phoenix Police Dep't, 885 F.3d 639, 641 (9th Cir. 2018) (citations omitted).

When screening a complaint to determine whether it states any claim that is viable, the Court applies the same standard as it would when evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  See Rosati v. Igbinoso, 791 F.3d 1037, 1039 (9th Cir. 2015) (citation omitted).  Rule 12(b)(6), in turn, is read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure.  Zixiang Li v. Kerry, 710 F.3d 995, 998-99 (9th Cir. 2013).  Under Rule 8, each complaint filed in federal court must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  While Rule 8 does not require detailed factual allegations, at a minimum a complaint must allege enough specific facts to provide *both* "fair notice" of the particular claim being asserted *and* "the grounds upon which [that claim] rests."  Bell

9

1   Atlantic Corp. v. Twombly, 550 U.S. 544, 555 & n.3 (2007) (citation and

2   quotation marks omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

3   (Rule 8 pleading standard "demands more than an unadorned, the-defendant-

4   unlawfully-harmed-me accusation") (citing Twombly, 550 U.S. at 555).

5          To avoid dismissal on screening, a complaint must "contain sufficient

6   factual matter, accepted as true, to state a claim to relief that is plausible on its

7   face." Byrd, 885 F.3d at 642 (citations omitted); see also Johnson v. City of

8   Shelby, Miss., 574 U.S. 10, 12 (2014) (per curiam) (Twombly and Iqbal instruct

9   that plaintiff "must plead facts sufficient to show that [plaintiff's] claim has

10  substantive plausibility"). A claim is "plausible" when the facts alleged in the

11  complaint would support a reasonable inference that the plaintiff is entitled to

12  relief from a specific defendant for specific misconduct. Iqbal, 556 U.S. at 678

13  (citation omitted); see also Keates v. Koile, 883 F.3d 1228, 1242 (9th Cir. 2018)

14  ("[A] [Section 1983] plaintiff must plead that each Government-official defendant,

15  through the official's own individual actions, has violated the Constitution.")

16  (quoting Iqbal, 556 U.S. at 676); Gauvin v. Trombatore, 682 F. Supp. 1067, 1071

17  (N.D. Cal. 1988) (complaint "must allege the basis of [plaintiff's] claim against

18  each defendant" to satisfy Rule 8 requirements) (emphasis added). Allegations

19  that are "merely consistent with" a defendant's liability, or reflect only "the mere

20  possibility of misconduct" do not "show[] that the pleader is entitled to relief" (as

21  required by Fed. R. Civ. P. 8(a)(2)), and thus are insufficient to state a claim that is

22  "plausible on its face." Iqbal, 556 U.S. at 678-79 (citations and quotation marks

23  omitted).

24         At this preliminary stage, "well-pleaded factual allegations" in a complaint

25  are assumed true, while "[t]hreadbare recitals of the elements of a cause of action"

26  and "legal conclusion[s] couched as a factual allegation" are not. Id. (citation and

27  quotation marks omitted); Jackson v. Barnes, 749 F.3d 755, 763 (9th Cir. 2014)

28  ("mere legal conclusions 'are not entitled to the assumption of truth'") (quoting

1    Iqbal, 556 U.S. at 678-79), cert. denied, 574 U.S. 1077 (2015).  In addition, the

2    Court is "not required to accept as true conclusory allegations which are

3    contradicted by documents referred to in the complaint," Steckman v. Hart

4    Brewing, Inc., 143 F.3d 1293, 1295-96 (9th Cir. 1998) (citation omitted), and

5    "need not [] accept as true allegations that contradict matters properly subject to

6    judicial notice or by exhibit," Sprewell v. Golden State Warriors, 266 F.3d 979,

7    988 (9th Cir.), amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001) (citation

8    omitted).

9           In general, civil rights complaints are interpreted liberally in order to give

10   *pro se* plaintiffs "the benefit of any doubt."  Byrd, 885 F.3d at 642 (citations and

11   internal quotation marks omitted).  Nonetheless, a *pro se* plaintiff must still follow

12   the rules of procedure that govern all litigants in federal court, including the

13   Rule 8 requirement that a complaint minimally state a short and plain statement of

14   a claim that is plausible on its face.  See Ghazali v. Moran, 46 F.3d 52, 54 (9th Cir.

15   1995) (per curiam) ("Although we construe pleadings liberally in their favor, pro

16   se litigants are bound by the rules of procedure.") (citation omitted), cert. denied,

17   516 U.S. 838 (1995); see also Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d

18   939, 954 (9th Cir. 2011) (en banc) ("[A] liberal interpretation of a . . . civil rights

19   complaint may not supply essential elements of [a] claim that were not initially

20   pled.") (quoting Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992)) (quotation

21   marks omitted; ellipses in original).

22          If a *pro se* complaint is dismissed because it does not state a viable claim,

23   the court must freely grant "leave to amend" (that is, give the plaintiff a chance to

24   file a new, corrected complaint) if it is "at all possible" that the plaintiff could fix

25   the identified pleading errors by alleging different or new facts.  Cafasso, U.S. ex

26   rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1058 (9th Cir. 2011) (citation

27   omitted); Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc).

28   ///

**B.     Section 1983 Claims**

To state a Section 1983 claim, a complaint must allege that a defendant, while acting under color of state law, caused a deprivation of the plaintiff's federal rights.  42 U.S.C. § 1983; West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted).  There is no vicarious liability in Section 1983 lawsuits.  Iqbal, 556 U.S. at 676. (citing, *inter alia*, Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 691 (1978)).  Hence, a government official may not be held liable under Section 1983 unless the particular official's own actions caused the alleged constitutional deprivation.  OSU Student Alliance v. Ray, 699 F.3d 1053, 1069 (9th Cir. 2012) (citing Iqbal, 556 U.S. at 676), cert. denied, 571 U.S. 819 (2013).  A Section 1983 plaintiff must establish both causation-in-fact and proximate (*i.e.*, legal) causation.  See Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).  Allegations regarding Section 1983 causation "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."  Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988) (citations omitted).  "Sweeping conclusory allegations [regarding causation] will not suffice . . . ."  Id. (citation omitted).

An individual "causes" a constitutional deprivation basically when he (1) "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation"; or (2) "set[s] in motion a series of acts by others which the [defendant] knows or reasonably should know would cause others to inflict the constitutional injury."  Lacey v. Maricopa County, 693 F.3d 896, 915 (9th Cir. 2012) (en banc) (quoting Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978)) (quotation marks omitted).

///

12

Similarly, a government official acting in a supervisory capacity "causes" a deprivation to the extent he (1) personally participates in or directs a subordinate's constitutional violation; or (2) was not "physically present when the [plaintiff's] injury occurred," but the constitutional deprivation can, nonetheless, be "directly attributed" to the supervisor's own wrongful conduct.  Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011), cert. denied 566 U.S. 982 (2012); see also OSU Student Alliance, 699 F.3d at 1069 (citing Iqbal, 556 U.S. at 676).  Under the latter theory, even absent "overt personal participation," a supervisor may be liable under Section 1983 if he created, promulgated, implemented, advanced, or was otherwise responsible for the continued operation of a policy that "requires subordinates to commit constitutional violations," and enforcement of the policy (either by the defendant-supervisor or his subordinates) proximately caused the plaintiff's constitutional injury.  OSU Student Alliance, 699 F.3d at 1076 (citing Dodds v. Richardson, 614 F.3d 1185, 1199 (10th Cir. 2010), cert. denied, 563 U.S. 960 (2011)); see also Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013) (supervisory officials may be held liable "even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of a constitutional violation'") (citation and internal quotation marks omitted).

### C.    First Amendment – Right to Seek Redress and to Be Free from Retaliation

"Prisoners have a First Amendment right to file grievances against prison officials . . . ."  Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citation omitted).  A prison official's alleged failure to process an inmate grievance may implicate a prisoner's First Amendment right of access to the courts, but to state such a claim, a plaintiff must show that he suffered an "actual injury" as a result of a defendant's actions.  Lewis v. Casey, 518 U.S. 343, 351-53, 354-55 (1996); see

1    generally <u>Bounds v. Smith</u>, 430 U.S. 817, 821 (1977) (well-established that

2    prisoners have a constitutional right of access to the courts), <u>abrogated in part on</u>

3    <u>other grounds by</u>, <u>Lewis</u>, 518 U.S. at 354.  To prove an actual injury, a prisoner

4    must show that a defendant hindered the prisoner's efforts to pursue a

5    nonfrivolous claim concerning his conviction or conditions of confinement.  <u>See</u>

6    <u>Lewis</u>, 518 U.S. at 354-55.  The mere denial of a grievance does not suffice.  <u>See</u>

7    <u>Ramirez v. Galaza</u>, 334 F.3d 850, 860 (9th Cir. 2003) (Prisoners do not have a

8    "separate constitutional entitlement to a specific prison grievance procedure.")

9    (citation omitted), <u>cert. denied</u>, 541 U.S. 1063 (2004); <u>see also, e.g.</u>, <u>Todd v. Cal.</u>

10   <u>Dep't of Corr. & Rehab.</u>, 615 F. App'x 415, 415 (9th Cir. 2015) (district court

11   properly dismissed claim based on improper "processing and handling of [] prison

12   grievances," since prisoners have no "constitutional entitlement to a specific

13   prison grievance procedure") (quoting <u>Ramirez</u>, 334 F.3d at 860) (quotation marks

14   omitted).

15       Retaliation against a prisoner for exercising his First Amendment right to

16   seek redress/access the court is an independent constitutional violation.  <u>Brodheim</u>

17   <u>v. Cry</u>, 584 F.3d 1262, 1269 (9th Cir. 2009).  To prevail on a First Amendment

18   retaliation claim, an inmate must prove that (1) the plaintiff/inmate engaged in

19   conduct that is protected under the First Amendment; (2) a prison official took

20   "adverse action" against the inmate; (3) the inmate's protected conduct was the

21   "substantial or motivating factor" behind the prison official's action; (4) the

22   official's retaliatory action "would chill or silence a person of ordinary firmness

23   from future First Amendment activities"; and (5) the action "did not advance

24   legitimate goals of the correctional institution" because it was either "arbitrary and

25   capricious" or "unnecessary to the maintenance of order in the institution."

26   <u>Watison</u>, 668 F.3d at 1114-15 (citations and internal quotation marks omitted);

27   <u>Brodheim</u>, 584 F.3d at 1271 (addressing First Amendment retaliation claim in

28   ///

14

1  summary judgment context).  "[T]he mere *threat* of harm can be an adverse action

2  . . . ."  <u>Watison</u>, 668 F.3d at 1114 (quoting <u>Brodheim</u>, 584 F.3d at 1270).

3       To satisfy the causation element of a First Amendment retaliation claim, an

4  inmate/plaintiff must demonstrate that there was a specific causal link between the

5  defendant's alleged retaliatory conduct and the inmate's exercise of a

6  constitutional right.  <u>See generally</u> <u>Hartman v. Moore</u>, 547 U.S. 250, 259 (2006)

7  (citations omitted); <u>Pratt v. Rowland</u>, 65 F.3d 802, 807-08 (9th Cir. 1995).  A

8  plaintiff may do so either with direct evidence of a defendant's retaliatory motive,

9  or with circumstantial evidence of the defendant's knowledge of the protected

10  conduct at issue *plus* some other evidence probative of retaliatory intent, such as

11  "(1) proximity in time between protected speech and the alleged retaliation;

12  (2) [that] the [defendant] expressed opposition to the speech; [or] (3) other

13  evidence that the reasons proffered by the [defendant] for the adverse . . . action

14  were false and pretextual."  <u>McCollum v. California Dep't of Corr. &  Rehab.</u>, 647

15  F.3d 870, 882 (9th Cir. 2011) (citation and quotation marks omitted; alterations in

16  original); <u>see generally</u> <u>Watison</u>, 668 F.3d at 1114 (direct evidence of retaliatory

17  intent "rarely" available).

18       **D.     Eighth Amendment – Excessive Force/Failure to Protect**

19       "Not every governmental action affecting the interests or well-being of a

20  prisoner is subject to Eighth Amendment scrutiny[.]"  <u>Whitley v. Albers</u>, 475 U.S.

21  312, 319 (1986).  "After incarceration, only the unnecessary and wanton infliction

22  of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth

23  Amendment."  <u>Id.</u> (internal quotation marks and citation omitted).  "[C]ourts

24  considering a prisoner's claim must ask:  1) if the officials acted with a sufficiently

25  culpable state of mind; and 2) if the alleged wrongdoing was objectively harmful

26  enough to establish a constitutional violation."  <u>Somers v. Thurman</u>, 109 F.3d 614,

27  622 (9th Cir.) (citing <u>Hudson v. McMillian</u>, 503 U.S. 1, 8 (1992)), <u>cert. denied</u>,

28  522 U.S. 852 (1997).  The relevant inquiry, when assessing Eighth Amendment

1  claims, is "whether force was applied in a good-faith effort to maintain or restore

2  discipline, or maliciously and sadistically to cause harm."  Hudson, 503 U.S. at 7;

3  see also Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003) (same).

4      The Eighth Amendment also requires prison officials to ensure the safety of

5  prisoners, including protecting prisoners from each other.  Farmer v. Brennan, 511

6  U.S. 825, 833 (1994); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005)

7  (citing Farmer, 511 U.S. at 833); see also White v. Roper, 901 F.2d 1501, 1503-04

8  (9th Cir. 1990) (insufficient protection of a prisoner resulting in harm inflicted by

9  other inmates may violate a prisoner's constitutional rights).  A prison official

10  violates the Eighth Amendment when:  (1) an inmate is incarcerated under

11  conditions posing a substantial risk of serious harm; and (2) the prison official

12  deliberately disregards the risk by failing to take reasonable measures to abate it.

13  Farmer, 511 U.S. at 847; Hearns, 413 F.3d at 1040-42.  Under this standard, the

14  prison official must not only "be aware of facts from which the inference could be

15  drawn that a substantial risk of serious harm exists," but that person "must also

16  draw the inference."  Farmer, 511 U.S. at 837.  A prison official acts with

17  deliberate indifference when he knows of and disregards an "excessive risk" of

18  harm to an inmate.  Colwell v. Bannister, 763 F.3d 1060, 1066 (9th Cir. 2014)

19  (citations omitted).  "If a [prison official] should have been aware of the risk, but

20  was not, then the [official] has not violated the Eighth Amendment, no matter how

21  severe the risk."  Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th

22  Cir. 2002) (citation omitted), cert. denied, 537 U.S. 1106 (2003), overruled in part

23  on other grounds by Castro v. County of Los Angeles, 833 F.3d 1060, 1076 (9th

24  Cir. 2016) (en banc), cert. denied, 137 S. Ct. 831 (2017).  A showing of mere

25  negligence or civil recklessness does not suffice.  See Farmer, 511 U.S. at 835-47.

26      When a plaintiff seeks to hold an individual defendant personally liable for

27  damages, the causation inquiry between the deliberate indifference and the Eighth

28  Amendment deprivation requires a very individualized approach which accounts

16

1  for the duties, discretion, and means of each defendant.  <u>Leer</u>, 844 F.2d at 633-34

2  (citation omitted).  The prisoner must set forth specific facts as to each individual

3  defendant's deliberate indifference.  <u>Id.</u> at 634.  There must be an affirmative link

4  between a defendant's actions and the claimed deprivation.  <u>See</u> <u>Rizzo v. Goode</u>,

5  423 U.S. 362 (1976).

6       **E.     Fourteenth Amendment – Due Process**

7       A due process claim based on prison disciplinary proceedings requires

8  allegations that state officials placed the inmate's liberty interest "at stake."

9  <u>Wilkinson v. Austin</u>, 545 U.S. 209, 221 (2005).  A protected liberty interest may

10  arise from the Constitution itself – such as when a change in an inmate's

11  conditions of confinement exceeds the inmate's sentence in a particularly

12  "unexpected manner . . . ."  <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995) (citations

13  omitted).  A protected liberty interest may also arise from state policies or

14  regulations.  <u>See</u> <u>Wilkinson</u>, 545 U.S. at 222 (citation omitted).  State-created

15  liberty interests, however, are "generally limited to freedom from restraint which .

16  . . imposes atypical and significant hardship on the inmate in relation to the

17  ordinary incidents of prison life."  <u>Sandin</u>, 515 U.S. at 484 (citations omitted).

18       In disciplinary proceedings which implicate the Fourteenth Amendment's

19  Due Process Clause, a prisoner charged with a disciplinary violation is entitled to

20  certain due process protections.  <u>Wolff v. McDonnell</u>, 418 U.S. 539, 564-71

21  (1974).  <u>Wolff</u> established five constitutionally-mandated procedural requirements

22  for such disciplinary proceedings.  First, "written notice of the charges must be

23  given to the disciplinary-action defendant in order to inform him of the charges

24  and to enable him to marshal the facts and prepare a defense."  <u>Id.</u> at 564.  Second,

25  "[a]t least a brief period of time after the notice, no less than 24 hours, should be

26  allowed to the inmate to prepare for the appearance before the [disciplinary

27  committee]."  <u>Id.</u>  Third, "there must be a 'written statement by the factfinders as

28  to the evidence relied on and reasons' for the disciplinary action."  <u>Id.</u> at 564-65

(quoting <u>Morrissey v. Brewer</u>, 408 U.S. 471, 489 (1972)).  Fourth, "the inmate
facing disciplinary proceedings should be allowed to call witnesses and present
documentary evidence in his defense when permitting him to do so will not be
unduly hazardous to institutional safety or correctional goals." <u>Id.</u> at 566.  Finally,
"[w]here an illiterate inmate is involved . . . or [where] the complexity of the issue
makes it unlikely that the inmate will be able to collect and present the evidence
necessary for an adequate comprehension of the case, he should be free to seek the
aid of a fellow inmate, or . . . to have adequate substitute aid . . . from the staff or
from a sufficiently competent inmate designated by the staff." <u>Id.</u> at 570.  In order
to meet the minimum requirements of procedural due process outlined in <u>Wolff</u>,
the findings of a prison disciplinary board also must be supported by "some
evidence."[3]  <u>Superintendent, Mass. Corr. Inst., Walpole v. Hill</u>, 472 U.S. 445, 454
(1985).

### F.    Fourteenth Amendment – Equal Protection

Pursuant to the Equal Protection Clause of the Fourteenth Amendment,
persons who are similarly situated must be treated alike. <u>City of Cleburne, Texas
v. Cleburne Living Center</u>, 473 U.S. 432, 439 (1985). To state an equal protection
claim, a plaintiff generally must "show that the defendants acted with an intent or
purpose to discriminate against the plaintiff based upon membership in a protected
class," such as race.  <u>Thornton v. City of St. Helens</u>, 425 F.3d 1158, 1166 (9th Cir.
2005) (citation and internal quotation marks omitted); <u>Sampson v. County of Los
Angeles</u>, 974 F.3d 1012, 1022 (9th Cir. 2020); <u>see also</u> <u>Monteiro v. Tempe Union
High Sch. Dist.</u>, 158 F.3d 1022, 1026 (9th Cir. 1998) ("We have held that § 1983
claims based on Equal Protection violations must plead intentional unlawful
discrimination or allege facts that are at least susceptible of an inference of

---

[3]The "some evidence" standard of review applies even when an inmate alleges that a
hearing officer has falsely found plaintiff guilty of a rules violation.  <u>Hines v. Gomez</u>, 108 F.3d
265, 269-70 (9th Cir. 1997), <u>cert. denied</u>, 524 U.S. 936 (1998).

discriminatory intent.").  If the action in question does not involve a suspect classification, a plaintiff may establish an equal protection claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose.  <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000); <u>San Antonio Indep. Sch. Dist. v. Rodriguez</u>, 411 U.S. 1 (1972); <u>SeaRiver Maritime Fin. Holdings, Inc. v. Mineta</u>, 309 F.3d 662, 679 (9th Cir. 2002).  To state an equal protection claim under this theory, a plaintiff must allege that: (1) the plaintiff is a member of an identifiable class; (2) the plaintiff was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment.  <u>Village of Willowbrook</u>, 528 U.S. at 564.

## IV.   DISCUSSION

Plaintiff's Second Amended Complaint is dismissed with leave to amend for violation of Rule 8 of the Federal Rules of Civil Procedure.  Moreover, as discussed below, several of plaintiff's claims fail to state a viable claim for relief.

### A.    Rule 8 of the Federal Rule of Civil Procedure

As noted above, Rule 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  "Each allegation must be simple, concise, and direct."  Fed. R. Civ. P. 8(d)(1).  Conclusory allegations are insufficient.  <u>See Iqbal</u>, 556 U.S. at 678, 686.  "Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice."  <u>Bautista v. Los Angeles County</u>, 216 F.3d 837, 841 (9th Cir. 2000) (citation omitted).  A complaint is subject to dismissal under Rule 8 if "one cannot determine from the complaint who is being sued, for what relief, and on what theory."  <u>McHenry v. Renne</u>, 84 F.3d 1172, 1178 (9th Cir. 1996).  Moreover, "Rule 8(a) has 'been held to be violated by a pleading that was needlessly long, or

1   a complaint that was highly repetitious, or confused, or consisted of

2   incomprehensible rambling'" Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys.,

3   Inc., 637 F.3d 1047, 1059 (9th Cir. 2011) (quoting 5 Charles A. Wright & Arthur

4   R. Miller, Federal Practice & Procedure § 1217 (3d ed. 2010)).

5        The Second Amended Complaint violates Rule 8 by failing clearly to

6   convey the legal and factual basis for each claim being asserted against each

7   defendant.  Instead, plaintiff very briefly sets forth three general "claims" that

8   neglect to identify which specific defendants or conduct is at issue.  Plaintiff then

9   includes a lengthy section of Factual Allegations, which comprises a variety of

10  detailed allegations against numerous defendants, many of whom had very

11  different responsibilities or involvement in the alleged harms.  Although the

12  Factual Allegations occasionally allude to "retaliation" and "due process" and to

13  plaintiff's rights to be free from deliberate indifference and abuse under the Eighth

14  Amendment, they fail to provide any clear notice as to which specific defendants

15  are being sued for each violation and for which conduct.  As a result, most

16  defendants would be unable to adequately understand and respond to the claims

17  and allegations against them.  To remedy this problem, plaintiff must, at a

18  minimum, provide clear factual allegations against each named defendant, separate

19  each legal predicate into a separate claim, and expressly identify which

20  defendant(s) are sued in each claim and which allegations are at issue in each

21  claim.  See Twombly, 550 U.S. at 555 & n.3 (complaint must allege enough

22  specific facts to provide both "fair notice" of the particular claim being asserted

23  and "the grounds upon which [that claim] rests").

24       Because the Second Amended Complaint fails to give defendants clear

25  notice of the claims asserted against them, dismissal of the Second Amended

26  Complaint for violation of Rule 8 is warranted.  See Hearns v. San Bernardino

27  Police Dep't, 530 F.3d 1124, 1129 (9th Cir. 2008) (court may dismiss complaint

28  with prejudice for violation of Rule 8); Nevijel v. N. Coast Life Ins. Co., 651 F.2d

671, 674 (9th Cir. 1981) (affirming dismissal of 48-page complaint and 23 page amended complaint that were both "verbose" and "confusing," for violation of Rule 8).  Here, dismissal with leave to amend is appropriate.

**B.     Failure to State a Claim**

In addition to violating Rule 8, the Second Amended Complaint is deficient in other respects, as well, including a failure to state certain claims.[4]

First, plaintiff fails to state a First Amendment claim against at least defendants Asuncion and Cherpin because plaintiff does not provide allegations showing that these defendants ever acted with the intent to prevent plaintiff from exercising his First Amendment rights or to retaliate against him for exercising such rights.  See Watison, 668 F.3d at 1114 (First Amendment retaliation claim much allege that the inmate's protected conduct was the "substantial or motivating factor" behind the prison official's action).

Second, plaintiff fails to state an Eighth Amendment claim against at least Bridgeforth, Cherpin, and Puentes because he does not allege that these defendants ever actually caused plaintiff harm or knowingly failed to protect plaintiff from a serious threat of harm.  See Hearns, 413 F.3d at 1042 (Eighth Amendment failure to protect claim requires allegations that inmate "faced a

---

[4]Plaintiff's allegations at least arguably state First and/or Eighth Amendment claims against some defendants.  Specifically, plaintiff at least arguably states a First Amendment claim against the following defendants, based on retaliatory acts of assault or threats of assault, related to the exercise of plaintiff's First Amendment rights:  Johnson (SAC ¶¶ 46-47, 52), Jordan (SAC ¶¶ 42-43), Ulstad (SAC ¶ 52), Montez (SAC ¶¶ 8-9, 11, 17), Bridgeforth (SAC ¶¶ 8-9), Garcia (SAC ¶ 22), Torres (SAC ¶¶ 31, 43), Campbell (SAC ¶¶ 31, 43, 52), Puentes (SAC ¶¶ 56-58), and Does 1-4 (SAC ¶¶ 48-52).  He also at least arguably states Eighth Amendment failure to protect or excessive force claims against the following defendants:  Asuncion (SAC ¶¶ 13-14, 16, 18, 25, 27-28, 34-35), Johnson (SAC ¶¶ 36-37, 46-47), Jordan (SAC ¶ 38), Ulstad (SAC ¶¶ 38, 44, 52), Montez (SAC ¶¶ 10-11, 15, 17), Garcia (SAC ¶ 26), Torres (SAC ¶¶ 29-31), Campbell (SAC ¶¶ 29-31, 48, 52), and Does 1-4 (SAC ¶¶ 48-51).  Even so, however, the Second Amended Complaint as a whole still merits dismissal with leave to amend, at least due to the violation of Rule 8 discussed above, which makes it difficult for defendants to properly discern and defend against the claims.

1    substantial risk of serious harm" and "disregard[ed] that risk by failing to take
2    reasonable measures to abate it") (internal quotation and citation omitted).
3    Plaintiff instead alleges, at most, that these defendants threatened plaintiff with
4    harm (see SAC ¶¶ 8-9, 12, 56-58), but not that they actually harmed him, caused
5    him to be harmed, or failed to protect him from harm.  See Keenan v. Hall, 83 F.3d
6    1083, 1092 (9th Cir. 1996) ("[V]erbal harassment generally does not violate the
7    Eighth Amendment."), as amended, 135 F.3d 1318 (9th Cir. 1998); Gaut v. Sunn,
8    810 F.2d 923, 925 (9th Cir. 1987) ("[I]t trivializes the [E]ighth [A]mendment to
9    believe a threat constitutes a constitutional wrong.").

10       Third, plaintiff fails to state a due process claim against any defendant,
11   particularly because plaintiff does not allege that any liberty interest was at stake.
12   He has not alleged, as he must under Sandin, facts related to the conditions or
13   consequences of his disciplinary hearings which show "the type of atypical,
14   significant deprivation [that] might conceivably create a liberty interest." Sandin,
15   515 U.S. at 486.  To the extent plaintiff claims that his placement in Ad-Seg
16   establishes a due process violation, the Second Amended Complaint does not
17   plausibly so allege.  Typically, placement in segregated housing in and of itself
18   does not implicate a protected liberty interest.  Serrano, 345 F.3d at 1078; see, e.g.,
19   Sandin, 515 U.S. at 485-86 (inmate's thirty-day placement in disciplinary
20   segregation, where conditions mirrored conditions imposed upon inmates in
21   administrative segregation and protective custody, did not result in type of
22   atypical, significant deprivation for which state might create liberty interest);
23   Resnick v. Hayes, 213 F.3d 443, 448-49 (9th Cir. 2000) (no protected liberty
24   interest in being free from confinement in prison's special housing unit ("SHU")
25   pending disciplinary hearing where complaint made no allegations that plaintiff's
26   conditions in SHU were materially different from conditions imposed on inmates
27   in purely discretionary segregation, that conditions in SHU created major
28   disruption in plaintiff's environment in comparison with conditions in general

population housing, or that SHU segregation at all affected the length of plaintiff's sentence); but see Serrano, 345 F.3d at 1078-79 (protected liberty interest implicated when wheelchair-assisted inmate put in SHU not designed for disabled persons, because placement forced him to endure situation far worse than a non-disabled person sent to SHU would have to face).  Here, the Second Amended Complaint does not allege facts about plaintiff's confinement in Ad-Seg which demonstrate that such confinement itself constituted a significant and atypical hardship relative to those in general population.  His conclusory allegations on this point (see SAC ¶ 39) do not suffice.  See Iqbal, 556 U.S. at 678, 686.

Finally, plaintiff fails to state any equal protection claim because he does not allege facts showing that any defendant intentionally discriminated against him based upon his membership in a protected class, such as race, see, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or that a defendant intentionally treated him differently from similarly situated individuals without a rational relationship to a legitimate state purpose, Village of Willowbrook, 528 U.S. at 564.  Prisoners are not a suspect class.  See Rodriguez v. Cook, 169 F.3d 1176, 1179 (9th Cir. 1999).

///
///
///
///
///
///
///
///
///
///
///

# V.   ORDERS[5]

In light of the foregoing, IT IS HEREBY ORDERED that the Second Amended Complaint is dismissed with leave to amend.

IT IS FURTHER ORDERED that within twenty (20) days of the date of this Order, plaintiff must do one of the following:

1.   File a Third Amended Complaint which cures the pleading defects set forth herein;[6] or

2.   Sign and file the attached Notice of Dismissal which will result in the voluntary dismissal of this action without prejudice; or

3.   File a Notice of Intent to Stand on Second Amended Complaint, indicating plaintiff's intent to stand on the Second Amended Complaint despite the

///

---

[5]The Magistrate Judge's orders herein constitute non-dispositive rulings on pretrial matters. See McKeever v. Block, 932 F.2d 795, 797-98 (9th Cir. 1991) (magistrate judges can dismiss complaints with leave to amend; dismissal of complaint with leave to amend is non-dispositive matter). To the extent a party disagrees with such non-dispositive rulings, such party may file a motion for review by the assigned District Judge within fourteen (14) days. See Local Rule 72-2.1. To the extent a party believes the rulings to be dispositive, rather than non-dispositive, such party has the right to object to this Court's determination that the rulings are non-dispositive within fourteen (14) days. A party will be foreclosed from challenging the rulings herein if such party does not seek review thereof, or object thereto.

[6]The Clerk is directed to provide plaintiff with a Central District of California Civil Rights Complaint Form, CV-66, to facilitate plaintiff's filing of a Third Amended Complaint if he elects to proceed in that fashion. Any Third Amended Complaint must: (a) be labeled "Third Amended Complaint"; (b) be complete in and of itself and not refer in any manner to the Second Amended Complaint – i.e., it must include all claims on which plaintiff seeks to proceed (Local Rule 15-2); (c) contain a "short and plain" statement of each of the claim(s) for relief (Fed. R. Civ. P. 8(a)); (d) make each allegation "simple, concise and direct" (Fed. R. Civ. P. 8(d)(1)); (e) set forth clearly the sequence of events giving rise to the claim(s) for relief in sequentially "numbered paragraphs, each limited as far as practicable to a single set of circumstances" (Fed. R. Civ. P. 10(b)); (f) allege specifically what each defendant did and how that individual's conduct specifically violated plaintiff's civil rights; (g) state the names of all defendants in the caption and not include in the body of the Third Amended Complaint defendants who are not also named in the caption (Fed. R. Civ. P. 10(a)); and (h) not add defendants or claims that are not reasonably related to the claims asserted in prior complaints.

1  pleading defects set forth herein, which may result in the dismissal of this action in

2  its entirety based upon such defects.

3       **Plaintiff is cautioned that plaintiff's failure timely to file a Third**

4  **Amended Complaint, a Notice of Dismissal, or a Notice of Intent to Stand on**

5  **Second Amended Complaint may be deemed plaintiff's admission that**

6  **amendment is futile, and may result in the dismissal of this action with or**

7  **without prejudice on the grounds set forth above, on the ground that**

8  **amendment is futile, for failure diligently to prosecute and/or for failure to**

9  **comply with this Order.**

10       IT IS SO ORDERED.

11  DATED:  September 25, 2023

12  _____
                /s/

13              Honorable Jacqueline Chooljian
            UNITED STATES MAGISTRATE JUDGE

14  Attachments